USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Apr. 30, 2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------ X
REMY SMITH,                          :
                                     :
                     Petitioner,     :
                                     :        No. 11 Civ. 6825 (JFK)
     -against-                       :        **OPINION & ORDER**
                                     :
SABINA KAPLAN, Superintendent,       :
Bedford Hills Correctional           :
Facility                             :
                                     :
                     Respondent.     :
------------------------------------ X

APPEARANCES

For Petitioner Remy Smith
Richard Levitt
Levitt & Kaizer


For Respondent Sabina Kaplan
Cyrus R. Vance
District Attorney, New York County
By: Vincent Rivellese


**John F. Keenan, United States District Judge:**

    Before the court is a petition for habeas corpus filed by Petitioner Remy Smith ("Petitioner" or "Smith") pursuant to 28 U.S.C. § 2254. For the reasons that follow, the petition is denied.

### I. Background

#### A. The Incident

    The following facts are taken from the two-volume Joint Appendix ("J.A."). On July 13, 2007, Smith was celebrating a friend's birthday in the Meatpacking District of Manhattan.

(J.A. 469-70). At the conclusion of the party around 4 a.m., Smith returned to her car and noticed that $3,000 was missing from her purse. She suspected Makeda Joseph ("Joseph"), another partygoer whom she had met only a few times before; Smith knew that Joseph had been carrying the former's purse for much of the evening. Smith sought to confront Joseph, who was in the driver's seat of her car, which was parked on Washington Street between 13th and 14th Streets. (Id. 476-80).

Witnesses told police that Smith approached Joseph's car carrying a gun, and cocked it as she came into Joseph's view. Smith then got in the car and demanded to search Joseph's purse for the $3,000. According to Joseph, a fight ensued and the women's hands flailed, breaking the rear view mirror. During the melee, Joseph stated, Smith shot Joseph in the stomach, then Smith went through Joseph's purse but did not find the $3,000. Joseph further stated that while she was bleeding, Smith fled the scene in her car, which she abandoned after crashing it into a parked car. (Id. 551).

Police arrived on the scene and Joseph was rushed to the hospital where she underwent emergency surgery. Investigators interviewed eyewitnesses, most of whom denied seeing anything. Joseph emerged from surgery the next day and recounted the

2

events of the prior evening to the police, who then identified Smith as a suspect. (Id. 77, 493-95, 519).

Smith was charged with two counts of Assault in the First Degree under N.Y. Penal Law § 120.10(1) (intentionally causing serious physical injury) and § 120.10(4) (causing serious physical injury in the course of a felony), one count of Attempted Coercion in the First degree under N.Y. Penal Law 135.65, and one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03).

### B. The Trial

On March 10, 2008, Smith's trial began before Justice Rena K. Ulliver.  The State called a crime scene reconstructionist, Officer Paul McLaughlin, who described the gun and how it was used; he also stated that Joseph's bullet wound indicates that she was shot from the passenger side of the car.  Officer McLaughlin further noted that, during his interview with Joseph, he showed her his own .45-caliber pistol to aid her in describing the gun Smith had used.  Joseph stated that the gun that Smith wielded was "smaller" and "heavier" than Officer McLaughlin's.  Officer McLaughlin clarified that when Joseph said Smith's gun was "heavier," she was not referring to actual weight, but the weight she perceived by looking at the gun. (J.A. 125-26, 140-47).

Next, Krystal Bolton, a mutual friend of Joseph and Smith, testified about the events leading up to the shooting. The trial judge had ruled that Bolton would not be permitted to testify to her knowledge that Smith carried a gun in her purse every day, since she had not seen Smith with the gun on the night of the shooting. (Id. 408-12).

Ojudun Oduwole, who attended the party on July 13, testified that he saw Smith exit her own car and walk to Joseph's car, carrying a gun. The defense pointed out that Oduwole first told the police that he was asleep in Bolton's car and did not see the incident. Oduwole also confirmed this story to the prosecutor during their first meeting. He stated that he did not initially talk to the police or the prosecutor because he believed that "what happens on the street should stay on the street." Once he spoke to Joseph and learned that she was cooperating with police, however, he decided to come forward. (Id. 270-77).

Krystal Ricks, another party attendee, testified that she saw Smith get into Joseph's car, but that she did not notice whether Smith was carrying a gun. She stated that she saw the two women "tussling" in Joseph's car and then heard a pop and saw a light. Ricks told the jury that she ran toward Joseph and called 9-1-1 while Smith got in her car and fled. (Id. 241-49).

Finally, Joseph testified about what happened in her car. She stated that she and Smith fought over Joseph's purse and, in the process, dislodged the rear view mirror.  As the mirror fell, Joseph turned her head to avoid being hit in the face by it, and she saw a flash of light, breathed in smoke, and realized that Smith had shot her.  On cross examination, Joseph admitted that she had instituted a $29 million lawsuit against Smith as a result of the shooting. (Id. 496-98, 570, 580-93).

During its case, the defense sought to call a ballistics expert who would testify that a gun can be accidentally fired during a struggle.  The Prosecutor objected, stating that there was no evidence of a struggle over the gun.  The judge permitted the expert testimony on the theory that the defense remained free to argue that the shooting was an accident resulting from the struggle over the purse, and either Smith or Joseph could have knocked into the gun. (Id. 751-52).

At the conclusion of the trial, the court informed defense counsel that since there was no evidence that Joseph ever held the gun, or that Smith and Joseph fought over the gun in the car, he could not speculate in his summation that the gun could have belonged to Joseph.  Nonetheless, defense counsel stated in his summation, "the only one claiming that the gun that shot [Joseph] belonged to Ms. Smith is she," and suggested that

5

Bolton could not "bring herself to get on the witness stand and make up seeing a gun." After a sidebar, the trial judge struck the defense counsel's statement from the record. (Id. 730-32, 807-13, 826).

### C. Jury Instructions and Verdict

Only a portion of the jury instructions are at issue in this petition. During the charge on reasonable doubt, the court informed the jury that it must "evaluate all the evidence and decide whether it's worthy of belief" and "whether the reliable evidence" satisfies it beyond a reasonable doubt. The court went on to say:

> Let me just note with regard to this charge, as you are aware, it was only Makeda Joseph who testified in her car on July 14th. I do instruct you if you find Ms. Joseph was truthful and accurate in her testimony to you, her testimony without any other eyewitness to what happened inside the car, under the law satisfies the proof beyond a reasonable doubt. The law does not require more than one witness to a crime in order to prove guilt by that standard because as I'm sure you are aware, most crimes are not committed on camera or before an audience. Since Ms. Joseph is the only witness to the event inside the car it is important that you examine her testimony with special care testing it for both truthfulness and accuracy, using the various guidelines I suggested in order to decide if the People have proved guilty [sic] beyond a reasonable doubt with regard to the events inside the car.

(Id. 906-10).

On May 13, 2008, Smith was convicted of all counts. She was sentenced to concurrent determinate prison sentences of eight years on the assault and weapon counts, to be served

6

concurrently with an indeterminate sentence of one and one third to four years on the coercion count.

### D. Petitioner's Appeals

The Appellate Division affirmed Smith's conviction on April 28, 2009, finding that the court properly exercised its discretion in precluding defense counsel from making a summation argument "positing an alternative scenario that would have required the jury to draw excessively speculative inferences from the evidence." (Id. 14-16). The Appellate Division further noted that although the court erred in instructing the jury that "if you find Ms. Joseph was truthful and accurate in her testimony to you, her testimony without any other eyewitness to what happened inside the car, under the law satisfies the proof beyond a reasonable doubt," the error was harmless because the jury charge as a whole was accurate. (Id.).

The New York Court of Appeals also affirmed the conviction, over two dissenting votes. The Court of Appeals agreed that the objected-to language was erroneous, but concluded that the charge taken as a whole conveyed the correct principles. As a result, it was unlikely that the jury could have misunderstood the reasonable doubt instruction. (Id. 1-14).

Petitioner filed the instant petition for a writ of habeas corpus on September 29, 2011.

## II. Discussion

### A. Applicable Law

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides the applicable standard of review in § 2254 habeas cases. See 28 U.S.C. § 2254 (2004). AEDPA provides, in relevant part, that to obtain habeas relief a state prisoner must show that the state court's adjudication of the claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005).

A state court decision is contrary to Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Williams v. Taylor, 529 U.S. 362 (2000). A state court decision constitutes an "unreasonable application" of clearly established federal law if (1) "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2)

the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

For a petitioner to prevail under § 2254, "[i]t is not enough that the habeas court has a 'firm conviction that the state court was erroneous.' Rather, the reviewing court must conclude that the state court's application of the law was 'objectively unreasonable.'" Cooper v. United States, No. 04 Civ. 1381, 2006 WL 2390266, at *5 (S.D.N.Y. Aug. 16, 2006) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). Further, where a state prisoner's claims were adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct. A habeas corpus petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Smith v. Conway, No. 06 Civ. 7674, 2008 WL 780635, at *7 (S.D.N.Y. Mar. 24, 2008).

### B. Application

#### i. Trial Court's Restrictions on Defense Summation

According to Petitioner, there is "considerable support in the evidence" that it was Joseph, not Smith, who possessed the gun and that the gun could have discharged during a struggle

over the gun. First, Petitioner states that Officer McLaughlin's testimony that Joseph described Smith's gun as "heavier" than Officer McLaughlin's gun undercuts Joseph's statement that she never touched the gun. Petitioner states that "the jury could easily have rejected [Joseph's] testimony . . . and concluded that she – not Ms. Smith – possessed the gun in the car." (Def. Mem. at 5).

Second, Petitioner argues that the jury could have decided that rear view mirror was dislodged as a result of a struggle over the gun, not Joseph's purse. To support this contention, Petitioner states that "a hard gun was more likely to break the mirror than either their hands or the purse." (Def. Mem. at 5).

Third, Petitioner urges that the jury could have rejected Joseph's testimony on the grounds that she had brought a $29 million civil suit against Smith. Petitioner avers that this suit would necessarily hinge on the fact that Smith brought the gun to Joseph's car.

Finally, Petitioner notes that Oluwole, who considered Joseph "like a sister" (A. 271-72), was not credible because he made inconsistent statements to the police and the prosecutor. Therefore, Petitioner argues that his testimony that he saw Smith approach Joseph's car with a gun should not have been given any weight.

10

Petitioner's objection to the trial court's limitation on defense counsel's summation is without merit.  While the Supreme Court has determined that the Sixth Amendment right to effective assistance of counsel encompasses the ability of defense counsel to advance his own theory of defense, "even where . . . the inferences proposed by the defense are tenuous or far-fetched." Herring v. New York, 422 U.S. 853, 857 (1975), this protection still requires that the theory has some foundation in the evidence.

Petitioner has not established that any of the evidence could have led to the conclusion that Joseph owned the gun; indeed, the issues she has identified as supportive of her theory are irrelevant.  First, Officer McLaughlin's testimony that Joseph described Smith's gun as "heavy" does not support the inference that Joseph owned the gun, especially since he stated that Joseph was merely describing how the gun looked. Second, the mere fact that a gun is harder than a purse does not make it more likely that the gun, not the purse, dislodged the rear view mirror.  Similarly, Joseph's civil suit against Smith has no relation to the issue of gun ownership.  Finally, the mere fact that Oluwole may lack credibility does not lend credence to Petitioner's position that Joseph could have owned the gun.

For defense counsel to have been permitted to advance his theory, he needed to lay even a minimal foundation for such an inference during the trial.  Defense counsel did not elicit any evidence to that effect and now seeks to question the credibility of the People's witnesses in an effort to cobble together a foundation.  The trial record is void of any evidence that Joseph ever possessed the gun, rendering defense counsel's theory pure speculation.  As such, it was properly excluded from his summation.

### ii.  Jury Instructions

Petitioner has objected to a single sentence in the trial court's instruction on reasonable doubt:  "if you find [Joseph] was truthful and accurate in her testimony to you, her testimony without any other eyewitness to what happened inside the car, under the law satisfies proof beyond a reasonable doubt."  Both the Appellate Division and the Court of Appeals agree that this sentence was erroneous because it omitted the reminder that such testimony would still have to satisfy the elements of the crime beyond a reasonable doubt.  However, both courts affirmed the conviction on the grounds that the trial court accurately stated the principle of reasonable doubt both before and after the challenged sentence, so there was no possibility of jury confusion.  The Court of Appeals wrote:

> Although the challenged sentence itself does not convey the
> principle that a single victim's testimony can on its own
> prove guilt beyond a reasonable doubt, [the trial] Court
> immediately went on to state that principle
> correctly. . . . Moreover, the [the trial] Court
> emphasized, in parts of the jury charge immediately before
> and after the challenged sentence, that the central duty of
> the jury was to decide whether the crimes charged had been
> proved beyond a reasonable doubt.

(J.A. 3).

Petitioner states that the challenged sentence constitutes reversible error. Citing a 1985 Supreme Court case, she posits that "language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." Francis v. Franklin, 471 U.S. 307, 322 (1985). Therefore, Petitioner argues, the trial court's erroneous sentence warrants reversal.

Petitioner further argues that the error was exacerbated by the fact that the trial court precluded defense counsel from offering a version of events that was contrary to Joseph's testimony, "on the theory that Joseph was the sole eyewitness." Petitioner avers that the trial court effectively forced defense counsel to accept Joseph's testimony as true during his summation, and then gave an instruction "specifically targeted at [Joseph's] testimony."

Petitioner has misconstrued the applicable Supreme Court precedent. In fact, the Supreme Court has held that "not every

ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." <u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004).  Further, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." <u>Cupp v. Naughten</u>, 414 U.S. 141, 147-48 (1973).  In <u>Francis v. Franklin</u>, the case on which Petitioner relies, the Court admonishes that potentially erroneous jury instructions must be considered in context.  471 U.S. at 317 ("If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole.").

  Here, although the Court's instruction on reasonable doubt included what the state appellate courts concluded was an improper sentence, the remainder of the charge was entirely proper.  The erroneous language, which failed to remind the jury that the victim's testimony would have to satisfy the elements of a crime beyond a reasonable doubt, was both preceded and followed by instructions that render the jury charge constitutionally sound.  At the outset of the instruction on reasonable doubt, the trial court stated that the presumption of

innocence would be overcome only "by all of [the jurors] agreeing on the basis of the evidence . . . that the People have met their burden of proving [Petitioner's guilt] beyond a reasonable doubt." (J.A. 901-02). Further, the trial court told the jury that the People must prove "each of the component elements of the crimes [and if] the People fail in their burden as to any one or more of the elements of the crime," the jury must acquit the Petitioner. (Id. 902-03). Finally, the trial court stated, "you should consider whether there is any other evidence [or testimony that] tends or does not tend to support Ms. Joseph about what she told you." (Id. 910). Considering the erroneous sentence in the context of the overall charge, the record clearly demonstrates that the jury was properly instructed on the law.

 Petitioner's claim that the trial court restricted defense counsel's summation to the point where he was forced to accept Joseph's testimony as true overstates the trial court's ruling. Defense counsel was merely precluded from speculating that the gun belonged to Joseph, as no evidence to support that theory was adduced at trial.

 Moreover, under AEDPA's deferential posture, the Court need only determine whether the state courts were unreasonable in finding that the jury instructions as a whole were

constitutional. Given that the vast majority of the instruction on reasonable doubt was proper, it is certainly reasonable to conclude that the jury instructions were proper as administered.

### III. Conclusion

For the foregoing reasons, Smith's petition for a writ of habeas corpus is denied.

**SO ORDERED.**

Dated:  New York, New York
        April 30, 2012

_____
John F. Keenan
United States District Judge